## SCHUH DRUG CO. v. UNITED STATES.
### No. 2253.

District Court, E. D. Illinois.

April 3, 1931.

David S. Lansden, of Cairo, Ill., for plaintiff.

Harold G. Baker, U. S. Atty., of East St. Louis, Ill., John W. Speakman, Asst. U. S. Atty., of Danville, Ill., and Jeff T. Jones, Sp. Counsel, Bureau of Internal Revenue, of Washington, D. C., for the United States.

WHAM, District Judge.

This is a suit brought by the Schuh Drug Company, a corporation, against the United States of America under the so-called Tucker Act (28 USCA § 41 (20) to recover the sum of $7,392.38 of the total sum of $8,-565.61 paid by the plaintiff to the government under protest on August 20, 1923, to meet the demands of the government based on the disallowance by the United States Commissioner of Internal Revenue of certain deductions claimed by the plaintiff in its income tax return for the year 1917 as losses on account of bad debts.

The entire controversy revolves around the right of plaintiff to a deduction of $24,-050 in its 1917 income tax return as a bad debt under the provisions of section 12 (a) of the Revenue Acts of 1916 and 1917 which reads as follows:

"Sec. 12. (a) In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—* * *

"Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise. * * *" 39 Stat. 767.

—and under the provisions of article 151 of the Regulations promulgated by the Commissioner of Internal Revenue under the Internal Revenue Acts of 1916 and 1917 which reads as follows:

"Art. 151. Bad debts.—Losses which may be properly deducted from gross income on account of bad debts or doubtful accounts are those which have been definitely ascertained to have occurred and which were charged off during the year for which the return is made. It is not essential that the bad debt or account shall be proved worthless by legal proceedings before the deduction may be allowed but the corporation must not only be satisfied that the debt or account is worthless, but must be able to satisfy the Commissioner or Collector of Internal Revenue that the accounts charged off were definitely determined at the time to be worthless and that they had not been recognized as worthless or without value prior to the beginning of the year for which the return is made."

It appears from the evidence that on March 16, 1917, the Schuh-Mason Lumber Company was indebted to the plaintiff in the sum of $29,050, consisting of advances and loans made by the plaintiff to said lumber company over a period from 1911 to 1915, as evidenced by certain notes and open accounts; that Paul G. Schuh, the president of the plaintiff corporation and the father

of Julius P. Schuh, the president of the Schuh-Mason Lumber Company, was an indorser on one of the notes of the Schuh-Mason Lumber Company to the Schuh Drug Company in the sum of $5,000. This was the only part of said indebtedness which was in any way secured. It appears further that the said Paul G. Schuh was the owner of a number of trade-marks and formulæ under which certain medicines were made and sold which he had permitted the Schuh Drug Company to use without charge for a number of years.

On March 16, 1917, a resolution was adopted by the directors of the Schuh Drug Company and ratified by its stockholders and spread upon its corporate records as follows:

"Be it resolved, that the indebtedness of the Schuh-Mason Lumber Company, Paul G. Schuh and Julius P. Schuh, separately and jointly, and pertaining to and occasioned by the Schuh-Mason Lumber Company, be cancelled and charged off the books of the Schuh Drug Company, and that all notes and evidence of such indebtedness be surrendered. In and as a consideration of and for the above, Paul G. Schuh assigns and transfers to the Schuh Drug Company the good will, trade marks, trade name, formulae, etc., pertaining to Schuh's Rattle Snake Oil Liniment, Paul's Great Specific, (PGS) and other preparations heretofore sold by the Schuh Drug Company with the consent of said Paul G. Schuh.

"We, the Directors, hereby unanimously adopt and approve this resolution by our formal signatures and recommend in addition thereto, that this Resolution and action be ratified by the stockholders; they likewise signing this resolution."

The following journal entry appears on the books of the plaintiff as of June 9, 1917:

| | Dr. | Cr. |
| --- | --- | --- |
| Merchandise | 24,247.09 | |
| Trade Mark | 5,000.00 | |
| Bills Receivable | | 27,350.00 |
| Schuh-Mason Lbr Co. | | 1,700.00 |
| J. P. Schuh | | 197.09 |

In its income tax return for 1917 the plaintiff claimed a deduction for bad debts of $29,247.09, which deduction was disallowed by the Commissioner of Internal Revenue. By his letter to the Schuh Drug Company, dated November 11, 1922, the Commissioner explains the disallowance by quoting the resolution of March 16, 1917, above set forth, and then going on to say: "From

the above, it is apparent that property has been received by the Schuh Drug Company in full satisfaction and consideration for the cancellation of the indebtedness of the Schuh-Mason Lumber Company. In a transaction of this nature no loss is involved in view of the fact that such property has not been accepted at a specified amount. The construction placed upon a transaction of this kind is that the assets taken over by the Schuh Drug Company are deemed to be worth the amount of the indebtedness cancelled." Pursuant to such disallowance, the plaintiff paid to the Commissioner of Internal Revenue, under protest, $8,565.61, which was in addition to the sum of $1,194 paid by the plaintiff at the time it filed its 1917 return, making the total amount paid $9,759.61 for the year 1917. On August 19, 1925, a claim for refund of the sum of $7,392.38, based upon the contention that, of the amount of $29,247.09 claimed as a deduction in plaintiff's 1917 return and disallowed, $24,050 should not have been disallowed, was made by the plaintiff upon the Commissioner, who, by letter of December 18, 1925, notified the plaintiff that the claim for refund would be rejected.

In the trial of the case the government objected strenuously to the admission of verbal testimony offered by the plaintiff for the purpose of showing the facts and circumstances leading up to and attendant upon the transaction disclosed in the resolution of March 16, 1917, and the journal entry of June 9, 1917, above set forth. The evidence was received subject to the objections of the government, which objections are now overruled. In my opinion, the plaintiff had the right to show all facts that may be helpful to the court in construing the true nature of the transaction shown by said resolution and book entry so long as such evidence did not tend to vary or contradict the plain meaning or substance appearing on the face thereof.

Without attempting to review the evidence I will state the conclusions of fact which I have reached therefrom:

(1) That the Schuh Drug Company made loans and advances to the Schuh-Mason Lumber Company in good faith expecting repayment.

(2) That the Schuh-Mason Lumber Company was in bad financial condition for several years prior to the year 1917, and that in the early part of that year the directors of the Schuh Drug Company reasonably reached

the conclusion that repayment in full of the indebtedness then amounting to $29,050 could not be hoped for, and decided that good business required them to get what they could on the indebtedness as soon as possible.

(3) That, pursuant to such decision, the directors obtained a compromise agreement whereby, in the exercise of reasonable discretion for the best interests of the Schuh Drug Company, they agreed to accept and did accept in full settlement of said indebtedness the title to all formulæ, trade-marks, and good will for the manufacture and sale of certain medical preparations owned by Paul G. Schuh, who was the principal stockholder in the Schuh-Mason Lumber Company and an indorser on a note for $5,000 constituting part of said indebtedness; that said formulæ, trade-marks, and good will were considered to be of considerable value, but of much less value than the amount of the indebtedness; that said settlement was shown on the books of the company by the resolution adopted March 16, 1917; that the plaintiff received nothing else in said settlement except said formulæ, trade-marks, and good will.

(4) That the precise value of said formulæ, etc., received in settlement of said indebtedness, was not known, nor was any value determined upon at the time of the said settlement and the adoption of said resolution; that such value was calculated and agreed upon at a later date in 1917 as being $5,000, as shown by the book entry on June 9, 1917; that the evidence in this case shows that the value so fixed was a fair value.

(5) That the said settlement was made in good faith and, as the directors believed, for the best interests and protection of the Schuh Drug Company under the conditions then existing, and thereby in the year 1917 the Schuh Drug Company knowingly suffered, accepted, and charged off a loss which was ascertained in the same year to be $24,050.

In arriving at the foregoing conclusions of fact, I have not overlooked the very close relationship shown by the evidence to have existed between the stockholders, officers, and the directorates of the Schuh Drug Company and the Schuh-Mason Lumber Company; nor the fact that the value of the formulæ, etc., received in settlement of the indebtedness, as subsequently fixed and determined, was the precise amount for which Paul G. Schuh, who was solvent, was individually responsible. In view of these facts, I have scrutinized the evidence with care in order to determine whether the transaction in question was made in good faith or was the result of collusion. After hearing the witnesses and considering the testimony given by them, I am convinced that the transaction was in accordance with the conclusions above stated, and that its good faith and propriety have been established. That the loss of $24,050 was actually suffered by the plaintiff cannot be questioned. From the evidence it appears that the loss was suffered and ascertained at a time and under circumstances that made it properly deductible by the plaintiff as a loss in its 1917 income tax return. Wherefore, it is apparent that to the extent of $24,050 the deduction for losses claimed by the plaintiff in its 1917 tax return should not have been disallowed by the Commissioner of Internal Revenue and, having been disallowed and paid by plaintiff under protest, the claim of the plaintiff for a refund of the taxes based thereon, amounting to $7,392.38, should not have been rejected by the Commissioner, but should have been allowed.

I find, therefore, that the plaintiff has sustained the burden of proof cast upon it, and the issues in the case should be held in favor of the plaintiff; that the plaintiff is entitled to a judgment for $7,392.38, with interest thereon as provided by law from the 20th day of August, 1923, with costs of suit.